## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## HORIZON PHARMA IRELAND LIMITED, HZNP LIMITED, HORIZON PHARMA USA, INC.,

*Plaintiffs-Appellants*

v.

## ACTAVIS LABORATORIES UT, INC.,

*Defendant-Cross-Appellant*

*Appeal from the United States District Court for the
District of New Jersey, Case No. 1:14-cv-7992 (consolidated with
1:15-cv-5025, 1:15-cv-6131, and 1:15-cv-6989), Judge Noel L. Hillman*

## Defendant-Cross-Appellant's

## REPLY BRIEF

John Christopher Rozendaal
Michael E. Joffre
Kristina Caggiano Kelly
William H. Milliken
**STERNE KESSLER GOLDSTEIN & FOX PLLC**
1100 New York Avenue, NW
Washington, DC 20005
202.371.2600


*Counsel for Defendant-Cross-Appellant,
Actavis Laboratories UT, Inc.*

Dated: December 4, 2017

# CERTIFICATE OF INTEREST

Counsel for Cross-Appellant Actavis Laboratories UT, Inc. certifies the following:

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10 % or more of stock in the party |
|---|---|---|
| Actavis Laboratories UT, Inc. | Not applicable. | Teva Pharmaceuticals USA, Inc.<br><br>Teva Pharmaceutical Industries Ltd. |

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court (**and who have not or will not enter an appearance in this case**) are:

| | |
|---|---|
| Liza M. Walsh<br>Christine I. Gannon<br>Katelyn O'Reilly<br>WALSH PIZZI O'REILLY FALANGA LLP<br><br>Christopher J. Borchert (formerly with the firm)<br>CONNELL FOLEY | Ralph J. Gabric<br>Mark H. Remus<br>Laura A. Lydigsen<br>Joshua E. Ney, Ph.D.<br>Joshua H. James<br>Andrew S. McElligott<br>Yun (Sophie) Wei, Ph.D. (formerly with the firm)<br>BRINKS GILSON & LIONE<br><br>John Christopher Rozendaal<br>Michael E. Joffre<br>Kristina Caggiano Kelly<br>William H. Milliken<br>STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C. |

5.  The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.

No appeal in or from the same civil actions in the lower court was previously before this or any other appellate court.

The following cases presently pending may directly affect or be affected by the Court's decision in this matter:

- *Horizon Pharma Ireland Limited, et al. v. Actavis Laboratories UT, Inc.*, Civil Action No. 1:16-cv-05051-NLH-AMD (D.N.J.)

- *Horizon Pharma Ireland Limited, et al. v. Lupin Limited, et al.*, Civil Action No. 1:16-cv-00732-NLH-AMD (D.N.J.)

- *Horizon Pharma Ireland Limited, et al. v. Actavis Laboratories UT, Inc.*, Civil Action No. 1:16-cv-00645-NLH-AMD (D.N.J.)

- *Horizon Pharma Ireland Limited, et al. v. Lupin Limited, et al.*, Civil Action No. 1:15-cv-07745-NLH-AMD (D.N.J.)

- *Horizon Pharma Ireland Limited, et al. v. Actavis Laboratories UT, Inc.*, Civil Action No. 1:15-cv-07742-NLH-AMD (D.N.J.)

- *Horizon Pharma Ireland Limited, et al. v. Actavis Laboratories UT, Inc.*, Civil Action No. 1:15-cv-05989-NLH-AMD (D.N.J.)

- *Horizon Pharma Ireland Limited, et al. v. Lupin Limited, et al.*, Civil Action No. 1:15-cv-06935-NLH-AMD (D.N.J.)

- *Horizon Pharma Ireland Limited, et al. v. Actavis Laboratories UT, Inc.*, Civil Action No. 1:15-cv-06131-NLH-AMD (D.N.J.)

- *Horizon Pharma Ireland Limited, et al. v. Lupin Limited, et al.*, Civil Action No. 1:15-cv-05027-NLH-AMD (D.N.J.)

- *Horizon Pharma Ireland Limited, et al. v. Actavis Laboratories UT, Inc.*, Civil Action No. 1:15-cv-05025-NLH-AMD (D.N.J.)

- *Horizon Pharma Ireland Limited, et al. v. Lupin Limited, et al.*, Civil Action No. 15 cv-03051-NLH-AMD (D.N.J.)

- *Horizon Pharma Ireland Limited, et al. v. Actavis Laboratories UT, Inc.*, Civil Action No. 1:14-cv-07992-NLH-AMD (D.N.J.)

- *Horizon Pharma Ireland Limited, et al. v. Actavis Laboratories UT, Inc.*, Civil Action No. 1:17-cv-03342-NLH-AMD (D.N.J.)


December 4, 2017                   /s/  *John Christopher Rozendaal*
                                    John Christopher Rozendaal

# TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT ........................................................................1

REPLY ARGUMENT ...........................................................................................5

I. HORIZON ABANDONS THE DISTRICT COURT'S UNEXPECTED RESULTS ANALYSIS IN FAVOR OF AN EQUALLY ERRONEOUS "RESULT-EFFECTIVE VARIABLE" THEORY. ...........................................5

II. HORIZON IDENTIFIES NO REASON TO AFFIRM THE DISTRICT COURT'S ERRONEOUS HOLDING ...........................................................10

CONCLUSION ...................................................................................................14

# TABLE OF AUTHORITIES

<u>Cases</u>

*Aventis Pharma Deutschland GmbH v. Lupin, Ltd.,*
    499 F.3d 1293, 1301 (Fed. Cir. 2007) .................................................................13

*In re Applied Materials, Inc.,*
    692 F.3d 1289 (Fed. Cir. 2012) ...........................................................6, 7, 8, 13

*In re O'Farrell,*
    853 F.2d 894, 903 (Fed. Cir. 1988) ....................................................................13

*KSR Int'l Co. v. Teleflex Inc.,*
    550 U.S. 398 (2007)......................................................................................12, 13

*Perfect Web Techs., Inc., v. InfoUSA, Inc.,*
    87 F.3d 1324 (Fed. Cir. 2009) ...........................................................................12

*Pfizer Inc. v. Mylan Pharms. Inc.,*
    71 F. Supp. 3d 458 (D. Del. 2014)................................................................12, 13


<u>Statues</u>

35 U.S.C. § 103(a) .....................................................................................................1

## SUMMARY OF THE ARGUMENT

Pennsaid 2% is a reformulation of Horizon's prior art product, Pennsaid 1.5%. Horizon reformulated Pennsaid 1.5% in order to address a few readily apparent shortcomings in the viscosity, drying time, and dosing frequency of the product. Appx15918-15919. These are standard problems in the art that have a standard range of solutions, and all of the modifications made to Pennsaid 1.5% flowed logically from the prior art. Appx15923.

The district court found every material fact in Actavis's favor. *See* Appx15922-15923. Even Horizon admits (at 15-16) that the district court found all of the relevant facts for Actavis (which Horizon characterizes as "the first part of Actavis's argument"). The court disagreed only with the ultimate legal conclusion (which Horizon characterizes as "the crux of Actavis's argument"). Yellow Br. 16.

Specifically, the district court accepted Actavis's position that, in formulating Pennsaid 2%, one of ordinary skill in the art would have started with the Pennsaid 1.5% prior art and adjusted that formulation to solve known problems with it. Appx15941. The court then expressly recounted each material fact underlying its determination of obviousness under 35 U.S.C. §103(a), and explained how it found that fact in favor of Actavis. Appx15922-15923. The district court found that formulators would know to increase the active concentration in the formulation from 1.5% to 2%—another concentration also

known in the art to be safe and effective.  Appx15919.  Formulators would know how to increase the viscosity using a standard amount of a common thickener.  Appx15913-15914.  Finally, formulators would know how to improve the drying time by increasing the ethanol content within a range taught by the prior art.  Appx15919.  Each modification had the intended effect.  Appx15936; Appx15941.  Each of the changes that led to Pennsaid 2% was within the numerical ranges of the teachings of the prior art.  Appx15919.  Nothing about the components or performance of the Pennsaid 2% formulation was unexpected.  *See* Appx15923.

After finding the relevant facts in Actavis's favor, the district court applied an erroneous legal standard. The district court's ultimate legal conclusion was that claim 12 was not obvious "because general principles and ranges of permissible concentrations would not have predicted *the exact formulation and dosing frequency*" of Pennsaid 2%.  Appx15923-15924 (emphasis added).  The district court reasoned that Pennsaid 2% was not obvious because the optimization of Pennsaid 1.5% *might have* produced an unexpected result, such that the *exact formulation* of Pennsaid 2% would have been unpredictable.  *See* Appx15932 ("it *might not always work as predicted* when a complex topical formulation attempts to drive an active ingredient across human skin") (emphasis added).  That analysis misapprehends the law.

Under a proper application of the law, the optimization of prior-art variables is deemed nonobvious only if the results produced by the optimization were actually unexpected. But, as Horizon concedes, the district court did not find that anything about Pennsaid 2% was actually unexpected. *See* Yellow Br. 39-41. (admitting that "it was not necessary for the District Court to consider whether the variables produced an unexpected result"). And Horizon never attempts to identify any property or component of Pennsaid 2% that constitutes an unexpected result. *See id.*

Horizon contends, however, that despite using the words "unexpected results," the district court did not actually rely on unexpected results to justify its holding. Yellow Br. 41. Instead, Horizon argues the district court found that the ingredients of Pennsaid 2% were not "result-effective variables," and therefore any modification to those ingredients would be unpredictable and per se nonobvious. *Id.* But Horizon is wrong; the district court *agreed with Actavis* that the identity of the ingredients in Pennsaid 2% and the ranges in their amounts—i.e., the variables—"flow logically from the prior art." Appx15923. The district court nonetheless concluded that the Pennsaid 2% formulation would not have been obvious because changes to the different variables in Pennsaid 1.5% *could* have interacted in unexpected ways—even though it is clear that, in actuality, they do not. Horizon's theory thus suffers from the exact flaw that Actavis dispelled in its

opening brief: it is improper to use evidence of general unpredictability in the art to declare that any given formulation in that art is per se nonobvious.

Regardless of whether one characterizes the district court's analysis as an unexpected-results analysis (as the district court did) or a result-effective-variable analysis (as Horizon does), the error is the same: the district court interpreted the law governing obviousness to require that the prior art predict the "*exact formulation and dosing frequency*" of the claimed composition, rather than describe a range of concentrations into which the claimed formulation falls. Appx15923. That is not a "cherry-picked" statement from the district court's decision, Yellow Br. 41; it is *the holding*. *See* Appx15923 ("[T]he Court finds that claim 12 in the '913 patent was not a result of routine optimization of PENNSAID® 1.5%. This is because general principles and ranges of permissible concentrations would not have predicted the exact formulation and dosing frequency that resulted in PENNSAID® 2%."). That holding is erroneous because the law does not require absolute predictability of success. Moreover, carried to its logical conclusion, the district court's holding would render all complex formulations per se nonobvious, regardless of how trivially different they are from the prior art.

# REPLY ARGUMENT

The "result-effective variable" theory that forms the basis of Horizon's argument on cross-appeal is nothing more than a repackaged version of the per-se-obviousness legal analysis that Actavis debunked in its opening brief. *See* Red Br. 67-73; *cf.* Appx15933 (identifying the result-effective variable argument as a legal one—not a factual one). Horizon's brief never once defends the district court's actual holding: that the claim is nonobvious solely because the prior art fails to predict "the exact formulation and dosing frequency" of the claim. Appx15923. That is because the holding is indefensible. An application of the correct law to the facts as found by the district court in this case compels the legal conclusion that claim 12 is invalid as obvious.

## I. HORIZON ABANDONS THE DISTRICT COURT'S UNEXPECTED RESULTS ANALYSIS IN FAVOR OF AN EQUALLY ERRONEOUS RESULT-EFFECTIVE VARIABLE THEORY.

Despite finding that each adjustment embodied in Pennsaid 2% "flow[s] logically from the prior art," the district court nonetheless concluded that the overall formulation was not the result of routine optimization because "general principles and ranges of permissible concentrations would not have predicted the exact formulation and dosing frequency that resulted in PENNSAID® 2%." Appx15923. That conclusion was legal error.

Horizon's response is to fault Actavis for using the phrase "unexpected results" in its opening brief rather than the phrase "result-effective variable." Yellow Br. 44. But that argument is mere wordplay; it does nothing to defend the district court's flawed legal analysis, as Horizon and the district court used the two phrases interchangeably. *See* Yellow Br. 41 (arguing that "[w]hile the District Court used the phrase 'unexpected results' in its Opinion . . . the District Court used this term to refer to . . . variables interacting in an unexpected way"); *see also* Appx15933 (identifying the term "result-effective variables" as "a legal principle not a scientific one").

Importantly, Horizon has not argued—and the district court did not find—that the ingredients in Pennsaid 2% were not result-effective in the sense that they "would [not] have been recognized by one of ordinary skill to affect a particular result," *In re Applied Materials, Inc.*, 692 F.3d 1289, 1296 (Fed. Cir. 2012). In fact, the district court found the opposite:

> The Court also accepts Actavis's position that a POSA would know from prior art, or even the POSA's general experience with formulating drugs, that: (1) glycerin hinders drying time, (2) ethanol reduces drying time, (3) ethanol can serve as a penetration enhancer, (4) HPC was an attractive thickener because it had been used in other diclofenac sodium formulations and formulations with other ingredients also found in PENNSAID® 1.5%, (5) an increase in concentration of diclofenac sodium can increase absorption, and (6) other diclofenac sodium formulations had been successfully applied less than four times a day resulting in the same daily therapeutic effect.

Appx15922-15923; *see also* Appx15933 (noting that, in topical formulation science, "individually adjusting one ingredient at a time may provide a predictable result").  Given what a skilled artisan knew, all of the individual adjustments to the Pennsaid 1.5% formulation performed exactly as expected.  Nevertheless, the district court found that, because several of the variables in Pennsaid 2% *could have* interacted with each other unexpectedly, reformulating Pennsaid 1.5% *could have* had unexpected results and therefore claim 12 was nonobvious.  *See* Appx15932.  Thus, Horizon's contention that the district court did not need to identify anything about Pennsaid 2% that was actually unexpected—because the district court's conclusion is supported by the finding that the ingredients in Pennsaid 2% are not result-effective variables, *see* Yellow Br. 39-41—is merely a repackaged version of the district court's flawed legal analysis, *see* Appx15922-15923.

In trying to explain its new twist on the result-effective variable argument, Horizon admits that "while '[t]he mere fact that multiple result-effective variables were combined does not necessarily render their combination beyond the capability of a person having ordinary skill in the art,' '[e]vidence that the variable interacted in an unpredictable or unexpected way could render the combination nonobvious." Yellow Br. 24-25 (quoting *Applied Materials*, 692 F.3d at 1298).  In other words, the finding that multiple variables in an invention could have

7

interacted with one another does *not* per se render a composition nonobvious—one needs to demonstrate that the variables actually interacted in an unexpected way. *See Applied Materials*, 692 F.3d at 1298. But Horizon never attempts to show that any of the variables in Pennsaid 2% actually interacted in an unpredicted or unexpected way. Nothing in Horizon's brief or the district court opinion identifies anything particular to Pennsaid 2% that was non-routine or otherwise supports a result-effective variable theory of non-obviousness.

Instead, Horizon argues that because Pennsaid is a complex topical formulation, *any* modification to Pennsaid 1.5% is unpredictable and therefore nonobvious. *See* Yellow Br. 39 (identifying generic tendencies of "complex topical formulation[s]" as "key" facts). Tellingly, the *only* fact finding about Pennsaid 2% that Horizon points to in support of its position is that Pennsaid is a "complex topical formulation." Yellow Br. 21, 39. That is the finding on which Horizon bases its entire erroneous theory on cross appeal. *See* Yellow Br. 28 (citing Appx15928).

All of Horizon's subsequent analysis discusses complex systems in general, rather than anything about Pennsaid 1.5% or Pennsaid 2% in particular. *See* Yellow Br. 28-30 (discussing expert testimony, Fick's law, and other evidence as applied to all complex systems). But Horizon defines a complex system as anything that involves more than an active ingredient and water. Yellow Br. 27

(defining a simple system as an active ingredient in water, in which neither component interacts "in any way with each other or with the skin," and a complex system as everything else); *see also* Appx15926 (reflecting the same definition of simple and complex systems). Under that definition, every topical formulation ever made is complex.

Horizon thus makes the same mistake that the district court made in arguing that, even where the results of a modification are exactly as expected, the fact that the system is complex implies that the modification *could have had* unexpected results, and therefore any and all results are unpredictable and—by definition—nonobvious. *See* Appx15932 (reasoning that because "a time-tested, accepted, even venerated hornbook scientific principle" like Fick's Law "might not always work as predicted," the results of applying Fick's Law are therefore nonobvious, even when those results are exactly what the Law predicted they would be).

In short, neither Horizon nor the district court have identified anything unexpected or non-routine about Pennsaid 2%. Their conclusion that Pennsaid 2% was nonetheless nonobvious was a misinterpretation of the law that receives de novo review from this Court. Both articulations of the theory (Horizon's and the district court's) are equally infected with the false premise that simply because modifying a complex system *can be* unpredictable, any and all results—expected or not—are by definition nonobvious. To affirm the district court's reasoning

9

would thus be to hold that any topical drug formulation, no matter how routine and expected, is *per se* nonobvious.

## II. HORIZON IDENTIFIES NO REASON TO AFFIRM THE DISTRICT COURT'S ERRONEOUS HOLDING.

Even under Horizon's application of the result-effective variable theory, the district court's holding that claim 12 is nonobvious because the prior art did not predict the exact formulation of the claims is legally erroneous. No part of Horizon's brief attempts to defend the district court's actual holding or legal analysis.

Horizon spends the first 13 pages of its responsive brief on cross appeal recounting evidence and arguments that it presented to the district court—all of which the district court considered, but did not accept. *See* Yellow Br. 2-14. Horizon attempts to recount the modifications made to Pennsaid 1.5% as though there were more than three and as though the choices were less intuitive than they were. *See* Yellow Br. 8 (listing eight purported changes by counting some changes twice and counting things that did not change). Unless Horizon is attempting to challenge the district court's fact findings (which it is not), all of that discussion is irrelevant.

Crucially—as Horizon *admits*—the district court found all of the relevant facts for Actavis ("the first part of Actavis's argument"), and disagreed only with the ultimate legal conclusion ("the crux of Actavis's argument"). Yellow Br. 15-

16 (admitting that the district court accepted that the prior art would have informed a POSA of the all of the components to change in Pennsaid 1.5% to improve upon the formulation's drawbacks, how to change each component, and the result to expect). Despite these dispositive admissions, Horizon attempts to characterize the district court's decision as turning on other facts found in Horizon's favor in an attempt to avoid de novo review. Yellow Br. 19.

The sole alleged facts that Horizon presents as found it its favor appear in a five-bullet-point list. *See* Yellow Br. 21, 39 (listing the same "facts" listed on pages 16-17). Every single purported "fact" in that short list is just a slightly different way of saying that drug development is unpredictable. *Id.* Additionally, Horizon lists the proposition that the ingredients of Pennsaid are not result-effective variables as a finding of fact, even though the district court expressly identified it as "a legal principle not a scientific one." Appx15933.

Contrary to Horizon's argument, Actavis did not "ignore[]" the findings set forth in that list. Yellow Br. 21. Actavis explained in detail throughout its opening brief how the observation that drug formulation is unpredictable is not the entirety of a proper obviousness analysis. Red Br. 61, 68, 72. Indeed, every one of Horizon's five purported "facts" can be said of every pharmaceutical formulation.

Horizon's brief then spends another ten pages walking through various prior art references presented at trial and rehashing its trial arguments about how

Pennsaid 2% does not flow from the prior art. *See* Yellow Br. 28-38. But Horizon already argued all of these facts to the district court, *and the district court rejected them.* *See* Appx15922-15923; Yellow Br. 15-16. Instead, the district court found that everything about Pennsaid 2% "flow[s] logically from the prior art," a finding that is not challenged on appeal. Appx15922-15923. The district court's sole basis for finding claim 12 nonobvious was that the prior art did not predict the exact formulation and dosing frequency of Pennsaid 2%. Appx15922-15923. That holding was legally erroneous because courts "need not seek out precise teachings directed to the specific subject matter of the challenged claim" in order to support a finding of obviousness. *Perfect Web Techs., Inc., v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009) (citing *KSR Int'l Co. v. Teleflex*, 550 U.S. 398, 418 (2007)).

Finally, Horizon alleges that Actavis "ignores" 38 pages of the district court's opinion, in which the district court applies its flawed legal standard to the facts of the case. Yellow Br. 42. That characterization of Actavis's brief is belied by Horizon's own arguments about the district court's analysis. For instance, Horizon contends that the district court did not lean as heavily on *Pfizer* as Actavis contends, even though the district court (1) stated that *Pfizer* was the most informative case, and (2) block-quoted the entire analysis in *Pfizer*. *Compare* Yellow Br. 42, *with* Appx15938 (quoting *Pfizer Inc. v. Mylan Pharms. Inc.*, 71 F. Supp. 3d 458, 469 (D. Del. 2014)). That Actavis discussed this legal analysis in

detail in its brief demonstrates that Actavis did not ignore any portion of the district court's legal or factual analysis. And in any event, regardless of how heavily the district court leaned on *Pfizer*, the fact that the district court identified it (sua sponte) as more relevant than any case cited by either party demonstrates that the district court misapprehended the obviousness inquiry and held the prior art to an erroneously high standard. Appx15936.

The law does not require that the prior art provide clearly delineated steps that predict the exact formulation of a claimed drug. Appx15938. It does not require absolute predictability of success. *See Aventis Pharma Deutschland GmbH v. Lupin, Ltd.*, 499 F.3d 1293, 1301 (Fed. Cir. 2007); *In re O'Farrell*, 853 F.2d 894, 903 (Fed. Cir. 1988). The law requires only that the prior art suggest or give rise to an expectation of success for solutions within the finite range of what the prior art teaches a skilled artisan. *See KSR*, 550 U.S. at 421; *Applied Materials*, 692 F.3d at 1298. This Court should demand nothing more from the prior art than what the law requires: that it render the claimed formulation obvious (or obvious to try) in light of the ordinary skill, creativity, and motivation of an artisan aware of Pennsaid 1.5%'s well-known problems and the prior art's well-known solutions.

\* \* \*

The ingredients in Pennsaid 2% are all common pharmaceutical components. Even 2% diclofenac sodium was previously known in the art to be

safe, effective, and compatible with Pennsaid's other ingredients.  Under Horizon's application of its result-effective variable theory, any modification to Pennsaid 1.5%, no matter how trivial, would be per se nonobvious.  Moreover, Horizon's contention that the ingredients of Pennsaid 2% are not result-effective variables—such that modifying them is per se nonobvious—would implicate nearly every topical composition ever developed.  Every adjustment made to Pennsaid 1.5% was made deliberately, in light of known principles, and with an expectation of a particular result.  Every expected result happened exactly within the range of what a skilled artisan would have expected.  This Court should reverse the district court's holding that the asserted claim was not obvious over the prior art.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's conclusion that claim 12 of the '913 patent is not obvious.

Dated: December 4, 2017

Respectfully submitted,

 /s/ *John Christopher Rozendaal*
John Christopher Rozendaal
Michael E. Joffre
Kristina Caggiano Kelly
William H. Milliken
**STERNE KESSLER GOLDSTEIN & FOX PLLC**
1100 New York Ave., N.W.
Washington, DC 20005
202.371.2600
*Counsel for Appellant/Appellee,*
*Actavis Laboratories UT, Inc.*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on  December 4, 2017
by:

- ☐ U.S. Mail

- ☐ Fax

- ☐ Hand

- ☒ Electronic Means (by E-mail or CM/ECF)

| John Christopher Rozendaal | /s/ John Christopher Rozendaal |
|---|---|
| Name of Counsel | Signature of Counsel |

| | |
|---|---|
| Law Firm | Sterne, Kessler, Goldstein & Fox P.L.L.C. |
| Address | 1100 New York Avenue, NW |
| City, State, Zip | Washington, DC 20005 |
| Telephone Number | (202) 772-8747 |
| Fax Number | (202) 371-2540 |
| E-Mail Address | jcrozendaal@skgf.com |

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

Reset Fields

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.  This brief complies with the type-volume limitation of Federal Rule of Federal Circuit Rule 32(a) or Federal Rule of Federal Circuit Rule 28.1.

☒  This brief contains *[state the number of ]* 3,148 _____ words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), or

☐  This brief uses a monospaced typeface and contains *[state the number of ]* _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Federal Circuit Rule 28.1 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☒  This brief has been prepared in a proportionally spaced typeface using

*[state name and version of word processing program ]* Microsoft Word 2010 _____ in

*[state font size and name of type style ]* 14 point Times New Roman _____ , or

☐  This brief has been prepared in a monospaced typeface using

*[state name and version of word processing program ]* _____ with

*[state number of characters per inch and name of type style]* _____ .

/s/ John Christopher Rozendaal
_____

**(Signature of Attorney)**

John Christopher Rozendaal
_____

**(Name of Attorney)**

for Defendant - Cross-Appellant
_____

**(State whether representing appellant, appellee, etc.)**

12/4/2017
_____

**(Date)**

Reset Fields