Green | Griffith

INTELLECTUAL PROPERTY LAW

October 5, 2018

Peter R. Marksteiner
Clerk of the Court
United States Court of Appeals
for the Federal Circuit
717 Madison Pl, NW
Room 701
Washington, D.C. 20439

**Re: *HZNP Medicines LLC, et al. v. Actavis Laboratories UT, Inc.*, 2017-2149, -2152, -2153, -2202, -2203, -2206**

Dear Colonel Marksteiner:

We represent the Plaintiffs-Appellants, HZNP Medicines LLC and Horizon Pharma USA, Inc. (collectively, "Horizon"), in the above-referenced consolidated appeals. We write in response to the Notice of Supplemental Authority submitted by the Defendant-Cross-Appellant, Actavis Laboratories UT, Inc. ("Actavis"), on October 2, 2018 (D.I. 74).

Actavis submitted as supplemental authority this Court's recent decision in *E.I. DuPont de Nemours & Co. v. Synvina C.V.*, No. 2017-1977, in which this Court reversed a finding by the Patent Trial and Appeal Board that a claimed method of producing the chemical 2,5-furan dicarboxylic acid (FDCA) was non-obvious. Actavis argues that this recent decision supports reversal in the above-captioned appeal of the District Court's finding that claim 12 of U.S. Patent No. 9,066,913 is valid and not obvious because according to Actavis the components of the prior art PENNSAID® 1.5% product are "necessarily result-effective variables *as a matter of law*" and that it therefore "follows that PENNSAID 2% was the obvious product of routine optimization." (D.I. 74 at p. 2 (emphasis in original).)

This Court's recent *DuPont* decision does not support reversal in the above-captioned appeal as to claim 12 of the '913 patent because the facts of the *DuPont* case are aptly distinguishable from the above-captioned appeal.

First, the issue in the present appeal is not simply whether a composition is obvious based on prior art describing overlapping ranges, as Actavis seems to imply in its October 2, 2018 letter (D.I. 74 at p. 2). Claim 12 of the '913 patent is directed to a method of treatment of osteoarthritis of the knee involving twice-daily dosing. The prior art PENNSAID® 1.5% formulation required dosing four times a day and differed from the formulation recited by the claimed method in numerous ways. Actavis's

obviousness case before the District Court was premised not only on "optimization" of a series of formulation variables, but also the ***addition*** of new components and ***subtraction*** of others, and the question of whether this combination of changes would have been reasonably expected to result in the claimed twice-daily method of treatment. By contrast, the facts of *DuPont* are aligned with the traditional "obviousness of ranges" case law. As this Court acknowledged, in *DuPont* the prior art disclosed the claimed method of oxidizing HMF to FDCA under reaction conditions that overlapped with the claimed reaction conditions, the only difference being the range of values for temperature and pressure.

Second, while the District Court's conclusion of nonobviousness in the present instance includes a finding that the components of the prior art PENNSAID® 1.5% formulation were not result-effective variables, the conclusion of nonobviousness is not limited to this finding, as was the case in *DuPont*. Rather, the District Court here found that a person of ordinary skill in the art could not have reasonably predicted that the *combination* of changes required to transform the prior art product PENNSAID® 1.5% to the formulation recited in claim 12 would result in a formulation having sufficient drug absorption to achieve efficacy via twice-daily dosing. The District Court made several findings in its opinion, which findings are amply supported by the record evidence, regarding the lack of predictability in the art relating to the combination, including that the effect of changes to the components of complex topical formulations such as PENNSAID® 1.5% on drug absorption are unpredictable due to interactions between those components and the skin, and that a POSA would not have reasonably predicted that the combination of changes to the components of PENNSAID® 1.5% would result in drug absorption that resulted in twice-daily dosing as required by the claim. (APPX15925-32; *see also* Horizon's Response and Reply Brief (D.I. 51) at pp. 26-30.) In making such findings, the District Court repeatedly credited Horizon's expert Dr. Annette Bunge over Actavis's expert Dr. Michniak-Kohn, quoting Dr. Bunge's testimony regarding the unpredictable interactions between the components of PENNSAID® 1.5% at length (APPX15926-27; APPX15929-31) and stating that Dr. Michniak-Kohn "fail[ed] to address, much less explain, this interrelatedness of the relevant variables" (APPX15927).

Third, evidence of unpredictable and unexpected interactions between the variables, in this case the variables of the formulation components and their interaction with skin, was not at issue in *DuPont*.

Thus, the issue in the above-captioned appeal is not simply about whether the individual components of PENNSAID® 1.5% are result-effective variables. As recognized by the District Court, the claimed method of treatment is nonobvious because such components interacted in unpredictable and unexpected ways, citing to this Court's precedent *In re Applied Materials* (e.g., "[e]vidence that the variables interacted in an unpredictable or unexpected way could render the combination nonobvious," 692 F.3d 1289, 1298 (Fed. Cir. 2012)). (APPX15917; APPX15936.) According to the District Court, the interrelated interactions of the complex topical

formulation made the invention "more akin to a crap shoot" than to routine optimization. (APPX15939.)

Given the above distinctions between the present appeal and *DuPont*, any assertion by Actavis that *DuPont* necessitates a finding of obviousness of claim 12 of the '913 patent is flatly wrong.[1]

As this Court aptly observed at the oral argument, this case was the quintessential battle of experts, and the District Court uniformly found Horizon's expert more credible, and more persuasive, in her reasoning and opinions. That conclusion is not error. Accordingly, Horizon respectfully requests that this Court affirm the District Court's finding of nonobviousness.

Very truly yours,

GREEN, GRIFFITH & BORG-BREEN LLP

By: Caryn C. Borg-Breen

Caryn C. Borg-Breen

[1] Horizon further notes that because the District Court determined the weight of the evidence supports the finding that claim 12 of the '913 patent is not obvious, the District Court declined to consider certain evidence of secondary considerations of non-obviousness. (*See* APPX15940 at n. 17.)